

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| T A M E K A   T .   C H U R C H ; | ) | **Bankruptcy No. 07-71774-CMS-13** |
| ALPHONSO RANCHER, | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |
| TESSIE P. CLEMENTS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | **CASE NO. 7:09-CV-2323-SLB** |
| | ) | |
| VALREY   W.   EARLY,   III, | ) | |
| Bankruptcy Administrator, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION

This case is before the court on Appellant's Notice of Appeal, (doc.1),[1] from the

August 21, 2009, Memorandum Opinion and Order of the United States Bankruptcy Court

for the Northern District of Alabama, *see In re Church*, No. BK 07-71774-CMS-13, 2009

WL 2600546 (Bankr. N.D. Ala. Aug. 21, 2009).  The Memorandum Opinion and Order

required debtors' attorney, appellant Tessie P. Clements, to "pay $1,200 to the Chapter 13

Trustee to be applied to the Debtors' bankruptcy case," and "denied her entitlement to the

portion of her $850 fee that the Chapter 13 Trustee has not yet disbursed."  *Id*. at 9.  Upon

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each
document as it is filed in the court's record.

consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Memorandum Opinion and Order of the bankruptcy court is due to be reversed.   The case will be remanded for further proceedings in accordance with this decision.

## I.  <u>STANDARD OF REVIEW</u>

This court has appellate jurisdiction pursuant to 28 U.S.C. 158(a).  The applicable standard of review regarding findings of fact is set out in Rule 8013 of the Federal Rules of Bankruptcy Procedure, which provides:

> On an appeal, the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Fed. R. Bankr. P. 8013.  A factual finding is not clearly erroneous unless "this court, after reviewing all of the evidence, [is] left with the definite and firm conviction that a mistake has been committed." *In re Int'l Admin. Servs., Inc.,* 408 F.3d 689, 698 (11th Cir. 2005) (citation omitted).  Review of the bankruptcy court's legal conclusions and mixed questions of law and fact is *de novo*.  *See In re Cox,* 493 F.3d 1336, 1340 n. 9 (11th Cir. 2007) (*citing In re Calvert,* 907 F.2d 1069, 1071 (11th Cir. 1990)); *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir. 1992).

## II.  <u>STATEMENT OF FACTS</u>

The bankruptcy court set forth the following Findings of Facts:

2

This matter is before the court on the [Administrator's] Motion for Examination of Debtors' Transactions with Attorney.  The [Administrator] became concerned about the accuracy of the Disclosure of Compensation of Attorney for Debtor ("Disclosure Statement") filed by Attorney Clements when [Ms. Church][2] called the [Administrator's] office to assert a grievance against Attorney Clements.  During the course of the phone call, [Church] stated that she was frustrated because she had paid Attorney Clements $1,200 to file a bankruptcy petition and now Attorney Clements refused to communicate with her or her husband, the joint debtor.  This statement caused the [Administrator] concern because the $1,200 figure cited by [Church] was inconsistent with Attorney Clements' Disclosure Statement, which stated that Attorney Clements was paid $0.00 by the Debtors prepetition.  Whether this unsolicited statement by [Church] is true is at the center of this controversy.

The Debtors made an initial appointment with Attorney Clements in early-to mid-September, 2007, because they wished to breach a real estate contract to sell their residential home located at 4126 Keene Mill Drive, Tuscaloosa, Alabama 35404.  The closing on the sale of the Debtors' home was to take place shortly after the Debtors' initial meeting with Attorney Clements,[3] and the Debtors were behind on other bills, so Attorney Clements decided that filing a bankruptcy petition was in the Debtors' best interests.  These two facts comprise the vast majority of undisputed facts in this case.  From this point on, the Debtors and Attorney Clements tell two very different versions of the events.

The Debtors assert that during the initial meeting with Attorney Clements they were told the fee to file a bankruptcy petition was $1,200, and that the $1,200 would have to be paid before such petition would be filed.  Debtors did not have that kind of money on hand.  Therefore, in an effort to fund Attorney Clements' attorney fees, the Debtors assert that they borrowed $4,636.45 from Acceptance Loan Company, Inc. ("Acceptance") on

---

[2]Debtors filed their Chapter 13 Petition in the names of Tameka T. Church and Alphonso Rancher.  Ms. Church now goes by the name Tameka T. Rancher.  *See Church*, 2009 WL 2600546 at 1 n.1.  The court will refer to this debtor as Ms. Church.

[3]Clements contends that this finding is not based on substantial evidence because Mr. Rancher testified that the closing was scheduled for the same day as debtors' first meeting with Clements.  (Doc. 3 at 8 [citing "Transcript, pg. 135, ln. 18-25; pg. 136; pg. 137, ln. 1-12"].)

September 18, 2007; of the $4,636.45, $3,383.87 was used to payoff a lien on Mr. Rancher' vehicle, which was used as collateral for the loan, and $1,252.58 was given directly to the Debtors in the form of a check, which the Debtors cashed immediately.  The Debtors further testified that they went by Attorney Clements' office on the afternoon of September 18, 2007, and gave the $1,200 to Attorney Clements' secretary, a young white female of medium build, while Attorney Clements was present.  The Debtors testified that they received a receipt for the $1,200, but they were not able to produce the receipt at the hearing because it had been misplaced.

Attorney Clements' version of events differs markedly from the Debtors'.  Attorney Clements testified that no payments were made to her or to her office prior to the filing of the Debtors' bankruptcy petition.  The Debtors' voluntary chapter 13 bankruptcy petition, which was filed by Attorney Clements on October 5, 2007, supports Attorney Clements' testimony.  Attorney Clements' Disclosure of Compensation, filed as part of the Debtors' bankruptcy petition, supports Attorney Clements' testimony because it certifies that Attorney Clements agreed to accept $850.00 as compensation for handling Debtors' case and also certifies that Attorney Clements received no money from Debtors prepetition.  The Debtors' Statement of Financial Affairs, filed as part of the Debtors' bankruptcy petition, also supports Attorney Clements' testimony:  Question 9 of the Debtors' Statement of Financial Affairs requires the Debtors to list all prepetition payments related to debt counseling or bankruptcy; no payments were listed – not the alleged $1,200 attorney fee, and not the $35 credit counseling fee. The Debtors' plan, filed by Attorney Clements on October 5, 2007, is also consistent with Attorney Clements' testimony:  the plan listed total attorney fees at $850.00 and listed $0.00 as the amount of money paid by the Debtors prepetition.  Unfortunately for Attorney Clements, this court will not be able to give these documents the weight they are normally given:  The evidence shows that in this case, the Debtors never signed the petition, the schedules, or the chapter 13 plan.[4]  Attorney Clements testified that she did not

---

[4]Clements contends that the Statement of Financial Affairs was properly executed because, "The electronic signature clearly allowed under Rule 9011 eliminates the requirement of handwritten signatures, with the exception of the Official Form B-21."  The Administrative Procedures for Filing, Signing, Retaining and Verification of Pleadings and Papers in the Case Management/Electronic Case Filing (CM/ECF) System, an Exhibit to Administrative Order No. 04-1, states:

obtain any original signatures from the Debtors. Attorney Clements further testified that she remembers going over the petition with [Ms. Church], but that she did not specifically remember going over the petition with Mr. Rancher prior to filing such bankruptcy petition. In addition to Attorney Clements' testimony, the Debtors testified that they never went over their bankruptcy petition before it was filed by Attorney Clements. The court will note that the Debtors did receive a copy of the chapter 13 plan and a copy of the Confirmation Order entered December 6, 2007, both of which show that Attorney Clements requested, and was awarded, an attorney fee of $850.

Because this controversy revolves around Attorney Clements' fee in this case, this court believes that an examination of the fees charged by Attorney Clements in other cases is warranted for comparison purposes. As such, the court reviewed all of the bankruptcy cases filed by Attorney Clements during the time period February 3, 2006 through April 29, 2009. This review revealed that, in every case except the Debtors', Attorney Clements charged fees ranging from $1,500 to $2,000. Attorney Clements filed 46 Chapter 13 bankruptcy cases during the time period February 3, 2006 through October 5, 2007, the date the Debtors' petition was filed: one of these cases (the Debtors') reflects an attorney fee of $850; two reflect an attorney fee of $1,500; twenty-nine reflect an attorney fee of $1,600; two reflect an attorney fee of $1,700; ten reflect an attorney fee of $1,800; one reflects an attorney fee

---

All filings, which (a) must contain original signatures[,] (b) require verification under FRBP 1008[,] or (c) contain an unsworn declaration as provided in 28 U.S.C. § 1746, shall be filed electronically or in accordance with the "Notice of Electronic Filing Procedures". ***Originally executed copies must be retained by the filer until three (3) years after the closing of the case***. This retention period does not affect or replace any other retention periods required by other applicable laws or rules. ***Upon request of a judge in a the bankruptcy case, the filer must provide original documents for review***.

Admin. Order 04-1, *Administrative Procedures for Filing, Signing, Retaining and Verification of Pleadings and Papers in the Case Management/Electronic Case Filing (CM/ECF) System*, § II (C)(1)(emphasis added). Although Clements could ***file*** documents with debtors electronic signatures, *see id*. (C)(2), she was required to obtain debtors' original signatures on their Statement of Financial Affairs. Debtors did not sign the Statement of Financial Affairs. Without evidence of their signatures, there is no evidence that debtors ever represented the statements contained therein were true under penalty of perjury.

of $1,900; and one reflects an attorney fee of $2,000.  The court also reviewed the fees charged by Attorney Clements in the twelve Chapter 13 cases filed by Attorney Clements during the time period October 5, 2007 through February 6, 2008, the six-month time period after the Debtors' bankruptcy petition was filed.  The court files reveal that Attorney Clements charged $1,600 in seven cases, $1,700 in two cases, and $1,800 in three cases.  The court also reviewed the fees charged by Attorney Clements in the twenty-eight Chapter 13 cases filed by Attorney Clements during the time period February 6, 2008 through April 29, 2009.  The court files reveal that Attorney Clements charged $1,600 in two cases, $1,800 in seventeen cases, $1,900 in six cases, and $2,000 in three cases.  As indicated by the above evidence, Attorney Clements charged the Debtors a much lower fee than the fee charged in any other case.  Attorney Clements testified that she charged the Debtors a low fee because "they were in a mess."  However, there was no evidence/testimony as to why the Debtors' problems warranted special consideration when most debtors have similar financial problems.  Attorney Clements also tried to explain the low fee by suggesting in her testimony that she had a prior personal connection with [Ms. Church].  However, there was no evidence of any prior personal connection, and [Ms. Church] testified that she had never met Attorney Clements prior to the meeting at Attorney Clements' office.  The court would also note that Attorney Clements did quite a bit of work in this case.  The Debtors had multiple legal problems:  Attorney Clements testified that she called and met with realtors involved in the pending sale of the Debtors' home; Attorney Clements also testified that she was successful in avoiding a lien on an air conditioner that was installed in the Debtors home, and that such efforts resulted in the Debtors receiving the air conditioner free of charge.

The Debtors and Attorney Clements were not the only parties to testify in this matter, an employee of Attorney Clements was also called to testify.  There were two employees working at Attorney Clements' office during the time in question:  Jennifer Cole and Christopher Clements (no relation to Attorney Clements).  Jennifer Cole appears to be the person to whom the Debtors allege they gave the $1,200.  She was Attorney Clements' secretary at the time, but did not testify at the hearing because she moved out of town and left Attorney Clements' office in May, 2008.  Christopher Clements is still employed at Attorney Clements' office, and he did testify at the hearing.

Christopher Clements began working for Attorney Clements in June, 2007.  When Christopher Clements started, he was a bit of an everyman:  he worked the front desk, gave out receipts, and filed documents. He testified that

he remembers working the afternoon the Debtors came in, and that he gave the Debtors a bankruptcy questionnaire, made copies of all the bills/financials the Debtors brought in, and then sent the Debtors back to Attorney Clements' office to talk to her.  He further testified that he was working the front desk the afternoon the Debtors came in and that no money was paid to him or Jennifer Cole.

In support of his assertion that Debtors had not paid him or Jennifer Cole any money prepetition, Christopher Clements testified that a search of the Quick Books' records revealed that no receipt had been issued to the Debtors during the time they were represented by Attorney Clements.  Christopher Clements testified that a search of Quick Books' records could be done either by name or by date.  He further testified that he searched for a receipt using the Debtors' name, but did not indicate under which name he conducted the search.  This information is important as there are some discrepancies in the name of [Ms. Church].  First, while [Ms. Church] is going by the name Tameka Rancher now, the bankruptcy petition was filed using her maiden name, Tameka Church.  Second, there is evidence that [Ms. Church] occasionally spells her name Tamekia.  The court does not know whether Christopher Clements searched for receipts using all possible names under which the receipt could have been filed.  Without knowing what name(s) Christopher Clements used in his search, the court cannot determine whether an exhaustive name search was conducted.  In addition, there was no evidence that Christopher Clements conducted a search of the computer system by dates, despite the fact that he testified that such a search was possible.  Christopher Clements also testified that, in his estimation, four to six receipts were generated at Attorney Clements office every week.  However, no computer records were produced to reflect receipts generated by the office computer system during the time at issue, despite the fact that voluminous phone records were produced to reflect incoming and outgoing calls from Attorney Clements' office.

Christopher Clements' testimony was important in another respect:  He was the only witness to testify in opposition to the written receipt for $35 dated September 17, 2007, produced by the Debtors.  The Debtors produced the $35 receipt and testified that such receipt was given to them as result of the money they paid to Attorney Clements' office for credit counseling.  Christopher Clements' testimony contradicts this assertion by the Debtors.  First, Christopher Clements testified that Attorney Clements' office was not issuing hand-written receipts at the time the Debtors came in to see Attorney

Clements.  Shortly after he began working at Attorney Clements' office, he upgraded her computer and phone systems, and part of such upgrade was to install Quick Books accounting software.  After the installation of Quick Books, all receipts were generated using the software and printed off the computer.  Christopher Clements further testified that even if someone had mistakenly issued a hand-written receipt, the $35 receipt did not match the written receipts that Attorney Clements' office issued prior to computerizing the office.  Christopher Clements also testified that it was not the practice of Attorney Clements' office to issue receipts for credit counseling.  This is true because Attorney Clements' clients normally take credit counseling themselves.  Someone at Attorney Clements' office would give the clients the phone number of a counseling service, and the clients would use their own credit card to pay the $35 fee.  However, if a client did not have a credit card, the client would bring $35 in cash to the office and then someone at the office would immediately pay for the credit counseling over the telephone.  No receipt would be issued in this instance.  There was no evidence of whether the Debtors paid for their credit counseling with their credit card or Attorney Clements' credit card.  It should be noted that nothing on the $35 receipt indicates that it was issued by Attorney Clements' office and that the initials on the receipt are not consistent with the initials of anyone at Attorney Clements' office.  It should also be noted that the Certificate of Credit Counseling filed in the Debtors' bankruptcy case is dated October 3, 2007, not September 17, 2007 as reflected on the $35 receipt.

*In re Church*, 2009 WL 2600546 at 1-4 (internal citations and original footnotes omitted; footnotes added).

In its Memorandum Opinion, the bankruptcy court held that Clements had the burden to prove she had not received the $1,200 payment alleged by Ms. Church.  *Id*. at 5.  It based its decision on caselaw establishing that the attorney "has the burden of proof on all issues arising under 11 U.S.C. § 329.  *Id*. at 5 and n.19 (citing, *inter alia*, *In re Rheuban*, 121 B.R. 368, 383 (Bankr. C.D. Cal. 1990)). With the burden of proof on Clements, the bankruptcy court found:

As there is no direct, physical evidence in this case, and the circumstantial evidence that has been proffered to this court weighs heavily in favor of the [Administrator's] position, this court finds that Attorney Clements failed to meet her burden of proof. The court might have decided differently if the Debtors had signed their petition and Statement of Financial Affairs because, at least then, the court would have documents executed by the Debtors under penalty of perjury inconsistent with their testimony to the court. However, the Debtors did not sign their petition or their Statement of Financial Affairs and the court cannot find in favor of Attorney Clements on this issue.

*Id*. at 6. Finding Clements had received $1,200 from debtors prepetition, the bankruptcy court held she had failed to disclose the payment as required by 11 U.S.C. § 329(a). Because Clements did not disclose the payment, the bankruptcy court sanctioned her, requiring her to pay $1,200 to the Trustee for the benefit of debtors' estate and denying her that portion of her requested $850 attorney fee, which remained unpaid.[5] *Id*. at 9.

Thereafter, Clements filed this timely appeal.

## III. DISCUSSION

### A. BURDEN OF PROOF

The bankruptcy court held:

[T]he court's determination of whether Attorney Clements, through her secretary, received the $1,200 will depend largely on whether [the Bankruptcy Administrator] or Attorney Clements has the burden of proof. This court finds that Attorney Clements has the burden of proof on all issues arising under § 329. *In re Rheuban*, 121 B.R. 368, 383 (Bankr. C.D. Cal. 1990)(finding that attorney seeking compensation under § 329 has the burden of proof on all issues arising under § 329). [Footnote] The court is aware that this places

---

[5]As of August 21, 2009, the date on which the Bankruptcy Court entered the Judgment, the Chapter 13 Trustee had disbursed approximately $740 of the $850 fee awarded to Clements, leaving $110 unpaid. *Church*, 2009 WL 2600546, at 2 n.12.

Attorney Clements in the unenviable position of having to prove a negative, but a party is not displaced of its burden of proof merely because such burden requires proof of a negative. *Batlan v. TransAmerica Commercial Finance Corp.* (*In re Smith's Home Furnishing, Inc.*), 265 F.3d 959, 967 (9th Cir. 2001); *Wallach v. Kurowski* (*In re Buffalo Restaurant Equip., Inc.*), 284 B.R. 770, (Bankr. W.D.N.Y. 2002).

> [Footnote]: Unfortunately, this court was unable to find a case finding that an attorney for the debtor bears the burden of proof on issues of disclosure pursuant to § 329(a). However, this court found numerous cases finding that an attorney for the debtor bears the burden of proof on issues of reasonableness pursuant to § 329(b). *See*, *e.g.*, *In re Jackson*, 401 B.R. 333, 341 (Bankr. N.D. Ill. 2009)("The attorney whose fee has been called into question, not the party questioning, bears the burden of showing the fee's reasonableness."); *Snyder v. Dewoskin* (*In re Mahendra*), 131 F.3d 750, 757 (8th Cir. 1997)("Section 329 requires the attorney to show that the agreed compensation for the legal services is reasonable."); *In re Mortakis*, 405 B.R. 293, 297 (Bankr. N.D. Ill. 2009) ("'Once a question has been raised about the reasonableness of the attorney's fee under [§] 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable.'" (quoting *In re Geraci*, 138 F.3d 314, 318 (7th Cir.1998)). In the absence of a provision to the contrary, this court can think of no reason why the burden of proof would rest with one party as to one subsection of § 329, and another party as to another subsection of § 329.

*In re Church*, 2009 WL 2600546 at 5.

The linchpin of this appeal is whether the bankruptcy court properly placed the burden of proof on the issue of the prepetition fee upon Clements. "[T]he assignment of the burden of proof is a rule of substantive law." *Director, Office of Workers' Compensation Programs, Dept. of Labor v. Greenwich Collieries*, 512 U.S. 267, 271 (1994)(citing *American Dredging Co. v. Miller*, 510 U.S. 443, 454 (1994)).

"The touchstone for determining the burden of proof under a statutory cause of action is the statute itself." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008)(citing *Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). If the statute is silent as to the burden of proof, the court "begin[s] with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Schaffer*, 546 U.S. at 56. "The burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally ***seeks to change*** the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." *Schaffer*, 546 U.S. at 56 (quoting 2 McCormick on Evid. § 337, at 412 (6th ed.))(emphasis added). "Perhaps the broadest and most accepted idea is that the person who ***seeks court action*** should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims." *Id.* (quoting C. Mueller & L. Kirkpatrick, Evidence § 3.1, p. 104 (3d ed. 2003))(emphasis added).

The bankruptcy code does not articulate who has the burden of proving debtors paid Clements a prepetition fee that she did not disclose. *See Church*, 2009 WL 2600546 at 5 n.19. Therefore, the court finds that the general rule applies and Early, the Bankruptcy Administrator, as the party seeking the court action, has the burden to show Clements received a prepetition fee. In this case, the bankruptcy court placed the burden on Clements based on caselaw requiring an attorney to prove the reasonableness of her fee. Such cases,

11

however, do not support the bankruptcy court's holding that Clements bears the burden of proving she did not ***receive*** a prepetition fee.

An attorney's obligation to disclose all fee arrangements and payments is governed by 11 U.S.C. § 329 and Bankruptcy Rule 2016.  Section 329 states:

> (a)   Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, ***shall file*** with the court ***a statement of the compensation paid or agreed to be paid***, if such payment or agreement was made after one year before the date of the filing of the petition, ***for services rendered or to be rendered in contemplation of or in connection with the case*** by such attorney, and the source of such compensation.

11 U.S.C. § 329(a)(emphasis added).  Rule 2016(b), which implements § 329, states, "Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code . . . ."  Fed. R. Bankr. P. 2016(b).  Underlying these provisions is a policy aimed at protecting both creditors and the debtor against overreaching attorneys.  *In re Ramelah*, No. 08-5074, 2009 WL 1213953, at *6 (E.D. Pa. May 5, 2009).  The disclosure process is "not to be taken lightly nor easily dismissed."  *In re Valladares,* 415 B.R. 617, 622 (S.D. Fla. 2009); *see Ramelah*, 2009 WL 1213953, at *6 ("The disclosure obligations of § 329 are mandatory, not permissive.") (citation omitted).  Indeed, "The disclosure rules are the underpinning on which the integrity of the entire bankruptcy system rests.  The court has a need and a right to expect from counsel full, unfettered disclosure of all fee and financial arrangements."  *In re New England*

*Caterers, Inc.*, 115 B.R. 724, 728 (Bankr. D. Mass. 1989).   "Disclosure of attorney compensation provides notice to all parties in interest of payments made by the debtor and gives interested parties the opportunity to object to any unreasonable fees paid to any particular attorney."   *In re Whaley*, 282 B.R. 38, 41 (M.D. Fla. 2002) (citing *In re Basham*, 208 B.R. 926, 931 (9th Cir. 1997)).

"To enforce the disclosure provisions, the bankruptcy courts have broad and inherent authority to deny compensation [when] an attorney fails to comply."  *In re Ramelah*, 2009 WL 1213953, at *7 (citations omitted).  Courts have held that attorneys who fail to disclose compensation "should suffer strict and quick consequences that could include the imposition of sanctions or the disgorgement of all fees paid in the case."  *In re Whaley*, 282 B.R. at 41 (citations omitted); *see also In re Ramelah*, 2009 WL 1213953, at *7 ("[A]n attorney who fails to comply with the requirements of § 329 forfeits the right to receive compensation for services rendered on behalf of the debtor, and a court may order an attorney sua sponte to disgorge funds already paid to the attorney."); *In re New England Caterers, Inc.*, 115 B.R. at 728 ("This fiduciary obligation of counsel must be strictly enforced.").

In this case, the Bankruptcy Administrator filed a "Motion for Examination of Debtor's Transactions with Attorney."  Rule 2017 of the Federal Rules of Bankruptcy governs enforcement of disclosure requirements.  In relevant part, Rule 2017(a) states:

> ***On motion by any party in interest*** or on the court's own initiative, ***the court*** after notice and a hearing ***may determine whether any payment of money*** or any transfer of property by the debtor, made directly or indirectly and ***in contemplation of the filing of a petition under the Code*** by or against the

13

debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered **is excessive**.

Fed. R. Bankr. P. 2017(a)(emphasis added).   By its terms, Rule 2017(a) centers on determining whether a fee is "excessive."  *Id*.  Therefore, adversarial proceedings initiated pursuant to Rule 2017 center on the reasonableness of the attorney's fee and/or whether the fee was paid in contemplation of the filing or a petition.  The fact of payment of a fee is not disputed in most reported cases.  *See, e.g., In re Ramelah*, 2009 WL 1213953, at *7 (noting that attorney did not dispute that he failed to disclose the fee charged to debtors, but rather argued that he was not obligated, under the circumstances, to disclose receipt of the fee); *In re Landstreet*, No. 1:09-MC-2, 2009 WL 1361962, *2-3 (E.D. Tenn. May 14, 2009) (sustaining allegation stated in show cause order that attorney "charged more than the fee disclosed in the disclosure statements filed with the court," but noting that the fact of amount paid versus that reported was undisputed).  In fact, this court has not found, and no party has cited, any case in which the disputed issue was whether an attorney had been paid any prepetition fee or deciding who has the burden of proof on the issue of the payment of the fee.[6]

In this case, the bankruptcy court concluded that to the debtor's attorney bears the burden of proof.  *In re Church*, 2009 WL 2600546 at 5.  In reaching this conclusion, the

---

[6]The bankruptcy court also noted that it had been "unable to find a case that an attorney for the debtor bears the burden of proof on issues of disclosure pursuant to § 329." *In Re Church*, 2009 WL 2600546 at 5 n.19.

court found "the attorney has the burden of proof on **all issues** arising under § 329." *Id.*

(citing *In re Rheuban*, 121 B.R. 368, 383 (Bankr. C.D. Cal. 1990)) (emphasis added). The

court noted it had "found numerous cases finding that an attorney for the debtor bears the

burden of proof on issues of reasonableness pursuant to § 329(b)." *Id.* at 5 n.19 (citing

*Snyder v. Dewoskin* (*In re Mohendra*), 131 F.3d 750, 757 (8th Cir. 1997); *In re Mortakis*, 405

B.R. 293, 297 (Bankr. N.D. Ill. 2009)(quoting *In re Geraci*, 138 F.3d 314, 318 (7th Cir.

1998)); *In re Jackson*, 401 B.R. 333, 341 (Bankr. N.D. Ill. 2009)). The court reasoned, "In

the absence of a provision to the contrary, this court can think of no reason why the burden

of proof would rest with one party as to one subsection of § 329 and another party as to

another subsection of § 329. *Id.* The bankruptcy court did not address the distinction

between an attorney seeking a fee, who must show the fee is reasonable, and an attorney

called upon to defend the accuracy of a fact set forth in her Statement of Compensation.

While this court agrees that the debtors' attorney bears the burden to prove her compensation

is reasonable and that the payment was, or was not, made in contemplation of the filing of

a bankruptcy case, this court does not agree that the attorney bears the burden of proving she

did not receive a fee, when her Statement of Compensation is challenged by the

Administrator or Trustee.

Clements argues that *In re Rheuban*, the case relied upon by the bankruptcy court to

support its holding that Clements had the burden of proof, is distinguishable and does not

justify the conclusion of law reached by the bankruptcy court.  (Doc. 3, p. 34.)  The court agrees.

In *In re Rheuban*, the bankruptcy court examined $1.5 million in compensation paid to the attorneys of a Chapter 11 debtor under a flat fee agreement, which provided that the attorneys would "represent Debtor in connection with the investigation and litigation of 'possible criminal and regulatory matters arising out of [Debtor's] business relationship with [FNSB],'" a failed savings and loan association.  *In re Rheuban*, 121 B.R. at 373-74.  The debtor failed to disclose the compensation paid to his attorneys when he filed his bankruptcy petition.  *Id.* at 372.  Responding to a show cause order, which required the attorneys to show "why the compensation received should not be disgorged as unreasonable under 11 U.S.C. § 329," *id.*, the attorneys argued, *inter alia*, that their "services were not rendered in a bankruptcy case or in connection with a bankruptcy case," *id.* at 373.  The court found:

> [T]he "in connection with" language used in § 329 extends the scope of the Court's review to compensation paid by the debtor to an attorney any time after one year prior to the commencement of the debtor's bankruptcy case, whether or not the court can make a subjective determination that the debtor was contemplating bankruptcy, if it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case.

*Id.* at 378.  Therefore, the court found the attorneys have the burden of proof on all issues arising under § 329.  *Id.* at 383 (citing *In re Swartout*, 20 B.R. 102, 105 (Bankr. S.D. Ohio

1982)).[7]   The court then examined the fee under the lodestar approach and found the fee

agreement was not reasonable.  *Id*. at 383-84.

> Clements argues –
>
> The most important factors that distinguish *In re Rhueban* with the Rancher
> case is that (1) in *Rheuban*, there was a written agreement between the parties
> evidencing the fee arrangement; (2) all parties admitted that there was a fee
> agreement to provide services for the debtor's criminal matters and (3) the
> attorneys . . . charged an excessive $1.5 million dollar "flat non-refundable
> fee" to the debtor.

(Doc. 3 at 31.)

This court notes that, despite the bankruptcy court's broad statements that "the

attorney bears the burden of proof in all matters arising under § 329," the issues in *Rheuban*

were whether the fee was reasonable and whether services were rendered in connection with

---

[7]In *Swartout*, the facts were undisputed and the issue for the court was whether the fee
was reasonable and whether the services were rendered in contemplation of and in
connection with a bankruptcy case.  *Swartout*, 20 B.R. at 104.  The court noted that "the role
of the Court as contemplated in 11 U.S.C. § 329 is to protect the interests of creditors of the
estate by allowance of compensation alleged due an attorney only to the extent actually and
reasonably compensable for the services provided."  *Id*. at 105.  The court held:

> Judicial determination under 11 U.S.C. § 329 is largely a factual inquiry
> made on a case-by-case basis.  As a general rule, the Court, as a member of the
> local bar and the bench, will decide matters such as hourly rates, the difficulty
> and complexity of the legal issues, the quality of the legal services, and amount
> of time appropriately billed for various legal tasks, without the necessity of
> expert testimony unless a particular element or elements have been placed at
> issue.  The Court also notes that the burden of proof in all issues under 11
> U.S.C. § 329 is on the attorney.

*Id*.

or in contemplation of a bankruptcy case.  *Id*. at 105, 106.  When an attorney seeks a fee, she has the burden to prove reasonableness and that her services were provided in connection with or contemplation of a bankruptcy case.  On this issue, the court agrees with the bankruptcy court.  However, the court disagrees that the attorney has the burden to prove payment of a fee when debtors allege such payment was made.

In this case, the Bankruptcy Administrator challenged Clements disclosure that she did not receive a prepetition fee.  His Motion is based on debtors' statements that they paid Clements $1,200.  As the party seeking to change the status, as well as the party alleging payment,[8] the Bankruptcy Administrator bears the burden of proving the debtors paid Clements $1,200 for handling their bankruptcy case.  He seeks to add money to the bankruptcy estate.  Generally, the Trustee or Administrator of the estate has the burden of protecting or growing the assets in the estate.  *See*, *e.g.*, *In re Egidi*, 571 F.3d 1156, 1160 (11th Cir. 2009)(trustee has burden of proving preferential transfer); *In re RNI Wind Down Corp.*, 369 B.R. 174, 181 (Bkrtcy. D. Del. 2007)(administrator has the burden of proof to disallow claims under 11 U.S.C. § 502(e)); *In re Lawrence*, 251 B.R. 630, 639-40 (S.D. Fla. 2000)(trustee has burden of proving a turn over proceeding).

---

[8]"The general common law rule regarding payment and burdens of proof subdivides into successive burdens.  First, once there is a prima facie showing of an indebtedness or obligation to pay, ***the burden of proving the facts regarding payment is on the party who alleges payment***, ordinarily the obligor or debtor."  *In re Garvida*, 347 B.R. 697, 705 (9th Cir. BAP 2006)(citing 70 C.J.S. *Payment* § 73; 60 AM. JUR. 2D *Payment* § 116).

Based on the foregoing, the court finds the Bankruptcy Administrator has the burden of proof.  Because the bankruptcy court's decision implies that its decision might have been different if the burden of proof was on the Bankruptcy Administrator, the case will be reversed and remanded to the bankruptcy court for further proceedings in accordance with this opinion.

## B.  § 1307 DISMISSAL

One of the issues raised by Clements in her appeal is, "Whether the trial court erred in requiring counsel to pay $1,200.00 into a case which should have already been dismissed because the trial [c]ourt never issued an order allowing the Debtors to miss payments while the matter regarding counsel's attorney's fees remained pending?"  (Doc. 3 at 2.)  Clements argues that debtors Chapter 13 petition should have been dismissed pursuant to 11 U.S.C. § 1307 before the issue of the prepetition fee was raised because debtors had missed a number of payments under their plan.  Apparently, Clements appears to argue that the bankruptcy court could not sanction her in a case that it should have dismissed.

First, the court notes that § 1307(c) is permissive; it states, in pertinent part:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court *may convert* a case under this chapter to a case under chapter 7 of this title, or *may dismiss* a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including –

(1)  unreasonable delay by the debtor that is prejudicial to creditors;

(2)  nonpayment of any fees and charges required under chapter 123 of title 28;

> . . .
>
> (4)  failure to commence making timely payments under section 1326
> of this title;
>
>
> . . .
>
> (6)  material default by the debtor with respect to a term of a confirmed
> plan;
>
> . . .

11 U.S.C. § 1307(a).  However, § 1307(a) does not mandate that the bankruptcy court dismiss debtors' Petition based on missed payments.  Therefore, the court will not reverse the bankruptcy court's decision based on its failure to dismiss debtors' case.

Second, the court notes that the bankruptcy court has the power to sanction Clements for nondisclosure even if it had dismissed debtors' Petition.  *See Cooter v. Gell & Hartmarx Corp.*, 496 U.S. 384, 395 (1990), *cited in In re Lawrence*, No. 97-14687-BKC-AJC, 2000 WL 33950028, 5 (Bkrtcy. S.D. Fla. June 2, 2000).  Therefore, a determination of whether or not the bankruptcy court could have or should have dismissed debtors' Petition is irrelevant to whether this court reverses or affirms the bankruptcy court's Order sanctioning Clements.

## C. REMAINING ISSUES

Because this case will be remanded to the bankruptcy court for further proceedings, Clements' remaining issues are pretermitted.

## <u>CONCLUSION</u>

For the foregoing reasons, the court is of the opinion that the August 21, 2009, Order of the bankruptcy court will be reversed and the matter remanded to the bankruptcy court for further proceedings.  An appropriate order will be entered contemporaneously herewith.

**DONE**, this 29th day of September, 2010.


_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE